# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1037

State of Minnesota,
Respondent,

vs.

Terrell McNeal, Jr.,
Appellant.

**Filed June 10, 2024**
**Reversed**
**Reyes, Judge**

Blue Earth County District Court
File No. 07-CR-22-1057

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent)

Daniel P. Repka, Repka Law, LLC, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Segal, Chief Judge; and Frisch, Judge.

## SYLLABUS

Because appellant's apartment door handle and lock were within the home's curtilage for purposes of the Fourth Amendment of the United States Constitution and article I, section 10, of the Minnesota Constitution, law-enforcement officers were required to obtain a search warrant supported by probable cause to swab those areas for the purpose of detecting trace amounts of controlled substances.

**OPINION**

**REYES**, Judge

In this appeal from a conviction of a second-degree controlled-substance crime, appellant argues that the district court erred by denying his motion to suppress evidence and determining that officers did not need a search warrant supported by probable cause to swab his exterior apartment door handle and lock, the results of which were used to obtain a search warrant for his apartment. Because we hold that appellant's apartment door handle and lock were within the curtilage of his home and entitled to constitutional protections, we reverse.

**FACTS**

On March 24, 2022, an officer with the Minnesota River Valley Drug Task Force applied for a search warrant to swab the exterior door handle and lock of appellant Terrell McNeal, Jr.'s apartment door to test for trace amounts of controlled substances. The district court issued the warrant (the first search warrant), and an officer executed the warrant that same day.

Appellant's apartment was one of two apartments on the main level of a locked building in which the individual apartment entrances were accessible from an interior common area. The officer executing the search warrant had learned the security code to access the common area from another officer who had obtained it from the building's landlord. Using the code, the officer executing the search warrant entered the common area of the building and swabbed the exterior of appellant's apartment door handle and lock with a sterile swab.

2

The officer submitted the swab for analysis by an Ionscan[1] system, which detected the presence of cocaine and MDEA, a controlled substance similar to the street drug ecstasy. Based on that evidence and the information provided in the first warrant, officers applied for a second search warrant to search inside appellant's apartment. Upon executing the second warrant, officers recovered large amounts of cash, various controlled substances, multiple guns, and drug paraphernalia from appellant's apartment.

In April 2022, respondent State of Minnesota charged appellant with seven counts related to possessing and selling controlled substances while possessing a firearm, as well as receiving stolen property, all based on the evidence gathered during the search of appellant's apartment.

Appellant requested a contested omnibus hearing to seek suppression of the evidence that the officers obtained by executing the search warrants, arguing that the first search warrant lacked probable cause, and therefore that the second search warrant also failed. The district court determined that, although probable cause did not support the first search warrant, the officers did not need it because the door handle and lock were not part of the curtilage of appellant's home, and he had no reasonable expectation of privacy in them. The district court further determined that the swab was lawful under Minnesota law because it was supported by reasonable, articulable suspicion.

Appellant waived his right to a jury trial and agreed to a court trial on stipulated evidence under Minn. R. Crim. P. 26.01, subd. 3, in exchange for the state dismissing all

---

[1] "Ionscan" refers to an Ion Mobility Spectrum and is a technology used to test for trace amounts of controlled substances.

charges except for count II, second-degree possession of 50 grams or 100 dose units of hallucinogens while possessing a firearm under Minn. Stat. §§ 152.022, subd. 2(a)(5) (2020), and 609.11, subd. 5(a) (2020). The district court held appellant's trial in February 2023, took the matter under advisement, and found him guilty and convicted him of count II. The district court denied appellant's motion for a downward dispositional departure and sentenced him to a presumptive sentence of 48 months in prison.

This appeal follows.

## ISSUE

Did the district court err by denying appellant's motion to suppress evidence that an officer obtained based upon a swab of appellant's apartment door handle and lock after determining that the door handle and lock were not within the curtilage of appellant's home?

## ANALYSIS

Appellant argues that the district court erred by determining that officers did not need a search warrant to swab his apartment door handle and lock because the door handle and lock were not within the home's curtilage and therefore not constitutionally protected. Appellant argues that this error requires reversal because the district court also determined that the first search warrant was not supported by probable cause, and therefore the second

search warrant also fails because it relied entirely on information from the first warrant and the swab evidence to establish probable cause.[2] We agree.

When reviewing a district court's denial of a pretrial motion to suppress evidence, appellate courts "review the district court's factual findings for clear error and its legal conclusions de novo." *State v. Molnau*, 904 N.W.2d 449, 451 (Minn. 2017). Appellant "bears the threshold burden of proving that [he] has a right protected by the constitution" while the state "bears the burden of establishing that the challenged evidence was obtained in accordance with the constitution." *State v. Edstrom*, 916 N.W.2d 512, 517 (Minn. 2018).

The United States and Minnesota constitutions require that government searches and seizures of people's "persons, houses, papers, and effects" be reasonable. U.S. Const. amend. IV; Minn. Const. Art. I, § 10. Unless an exception applies, searches conducted without a warrant are per se unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). A search can occur "when the government physically intrudes onto a constitutionally protected area." *Edstrom*, 916 N.W.2d at 517 (citing *United States v. Jones*, 565 U.S. 400, 406-07 n.3 (2012)). "[T]he Fourth Amendment protects the curtilage of a house and [] the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should

---

[2] Appellant has not challenged the district court's determination that officers had reasonable suspicion to swab appellant's apartment door handle and lock. Neither has appellant argued that the Minnesota Constitution provides greater protection in this context than the United States Constitution, and our analysis therefore addresses Fourth Amendment protections only. *See Kahn v. Griffin*, 701 N.W.2d 815, 824 (Minn. 2005) (acknowledging that states cannot interpret their constitutions to provide *less* protection than federal constitution).

be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). When determining the extent of curtilage, a court should consider four factors: (1) "the proximity of the area claimed to be curtilage to the home," (2) "whether the area is included within an enclosure surrounding the home," (3) "the nature of the uses to which the area is put," and (4) "the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301. These factors should be used to analyze the "centrally relevant consideration" of "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

Whether the warrantless collection of a sample from an apartment door handle and lock violates a party's constitutional rights is an unanswered question in Minnesota. *See State v. Barrios-German*, No. A17-0906, 2018 WL 1787683, at *6 (Minn. App. Apr. 16, 2018) (declining to decide whether officers' warrantless swab of apartment door was unlawful); *State v. Vagle*, No. A18-0878, 2019 WL 1758004, at *7 (Minn. App. Apr. 22, 2019) ("We therefore do not consider whether the warrantless collection of a sample [from appellant's apartment door handle] for Ionscan analysis violated [appellant's] Fourth Amendment rights, which appears to be an issue of first impression.").

In *Edstrom*, the supreme court considered "whether a warrantless narcotics-dog sniff in the hallway outside [of] respondent's apartment violated respondent's right to be free from unreasonable searches under the United States or Minnesota Constitution." 916 N.W.2d at 514. Because the Minnesota Constitution cannot provide less protection than the United States Constitution, the supreme court began its analysis with the United States Constitution. *Id.* at 517. The supreme court applied the *Dunn* factors to conclude that "the

6

privacies of life associated with the home do not extend into *the area immediately outside Edstrom's apartment*, such as the door seam," and therefore that area "is not curtilage of [his] home." *Id.* at 520 (emphasis added). The *Edstrom* court also concluded that the Minnesota Constitution required only that officers have reasonable, articulable suspicion to conduct the dog sniff lawfully. *Id.* at 524.

Applying *Edstrom* and *Dunn*, here the district court determined that "[*Dunn*] factors two through four . . . weigh[ed] in favor of finding the door handle to fall outside [the] curtilage." The district court reasoned that appellant's apartment door handle and lock were not curtilage of the home because an apartment door seam "is nearly indistinguishable from an apartment door handle except that the door handle is physically attached to the door," a distinction that it found "immaterial because the door seam is an area or space between the door and the door frame, rather than an actual physical object."

However, this case is factually distinct from *Edstrom*, and we are persuaded that analysis of the *Dunn* factors supports that appellant's apartment door handle and lock were within the curtilage of his home. "Curtilage" is the area "immediately surrounding and associated with the home." *State v. Chute*, 908 N.W.2d 578, 583 (Minn. 2018) (quotation omitted); *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quotation omitted). Unlike in *Edstrom*, in which the supreme court analyzed whether the *area* where the police dog stood as it conducted a sniff of appellant's apartment door was curtilage, the officers here went a step further and collected a sample from a door handle and lock that were *physically attached to and indivisible from appellant's home.*

7

Under the *Dunn* factors, an apartment door handle and lock are readily distinguishable from an apartment door seam. For the first factor of the area's proximity to the home, appellant's apartment door handle and lock were attached to and part of the door—the entrance to his home—weighing heavily in favor of finding them to be within the curtilage. *See Edstrom*, 916 N.W.2d at 518 ("The first [*Dunn*] factor suggests that the hallway immediately adjacent to Edstrom's apartment door could be part of the curtilage of the apartment. This area is physically very close to his home—it is immediately adjacent."). For the second factor, although the apartment door handle and lock were not within an enclosure surrounding appellant's home, they were a *part* of the enclosure that contained his home. Thus, they "should be treated as the home itself." *Dunn*, 480 U.S. at 300. As to the third *Dunn* factor of the nature and use of the area, although those at issue here faced a common area, apartment door handles and locks are primarily used to enter, exit, or exclude others from a home, actions that are reserved to the tenant, the tenant's invitees, and in limited circumstances, the landlord. The nature of the apartment door handle and lock's use weighs heavily towards concluding that they are within the curtilage. The fourth factor is neutral here, because although appellant took no steps to protect the apartment door handle or lock from passersby, there was nothing readily visible on the door handle or lock that might be observed. Considered together, the *Dunn* factors weigh towards the apartment door handle and lock being "so intimately tied to the home itself" that they should be accorded constitutional protection. *Id.* at 301.

Further, unlike in *Edstrom*, in which the holding relates to a *dog sniff* of an apartment door and door seam, the officer's search here required a *physical contact* by

8

swab of the apartment door handle and lock, the entry mechanism to the home. *See Jardines*, 569 U.S. at 5 ("When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." (quotations omitted)); *see also United States v. Bain*, 874 F.3d 1, 14, 19 (1st Cir. 2017) (concluding that apartment door's lock was "within the unit's curtilage even if . . . not within the unit itself" and that officers conducted unreasonable search by inserting key into lock to obtain information).[3] Although members of the public and law-enforcement officers generally have an implied license to approach a home, physically knock on the front door, and wait briefly to be received, they have no implied license to remove material from the door handle and lock for laboratory testing. *Jardines*, 569 U.S. at 9 ("To find a visitor knocking on the door is routine . . . ; to spot that same visitor exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to . . . call the police. The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose."); *Chute*, 908 N.W.2d at 586-87 (applying *Jardines*). Here, the officer's conduct by swabbing appellant's apartment door handle and lock for evidence was not within the scope of the implied license described in *Jardines*, as anyone "observing the officer's actions objectively would conclude that his [sole and exclusive] purpose" was to collect evidence from appellant's door handle and lock. *Chute*, 908 N.W.2d at 587. "[T]he background social norms that invite a visitor to

---

[3] We cite this case for its persuasive value only.

the front door do not invite him there to conduct a search," *Jardines*, 569 U.S. at 9, and an officer's purpose must be limited to what "any private citizen might do when visiting another's property," such as knocking on the door to make contact with the property owner, *Chute*, 908 N.W.2d at 588 (quotation omitted). The scope of the implied license does not depend upon the type of dwelling, whether it involves a door to a private residence or an apartment door.

Moreover, existing persuasive authority generally supports that a home's door handle is within the home's curtilage. *See United States v. Charles*, 290 F. Supp. 2d 610, 614 (D.V.I. 1999) ("Clearly, the doorknob on the defendant's front door of the [rented] residence is within the curtilage of the home" and "agents' warrantless search of the doorknob [by sample and analysis by Ionscan detector] for marijuana residue violated [defendant's] Fourth Amendment rights" and required suppression), *aff'd*, 29 F. App'x 892 (3d Cir. 2002); *United States v. Carter*, No. 020-CR-00035-MJD-KMM, 2020 WL 6136480 (D. Minn. Sept. 18, 2020) (referring to townhome's storm door and residence door as within curtilage for purposes of conducting swab for Ionscan analysis), *report and recommendation adopted*, No. 20-CR-35 (MJD/KMM), 2020 WL 6135901 (D. Minn. Oct. 19, 2020). Because an apartment door handle and lock serve the same function as those for a privately owned home, they are indistinguishable for constitutional purposes.

In summary, we hold that appellant's apartment door handle and lock were within the curtilage of his home, and therefore, absent an exception, officers were required to obtain a search warrant supported by probable cause to swab them for the purpose of detecting trace amounts of controlled substances.

**DECISION**

We hold that appellant's apartment door handle and lock were within the curtilage of the home protected by the Fourth Amendment of the United States Constitution and article I, section 10 of the Minnesota Constitution. Because the parties do not challenge the district court's determination that the first search warrant to swab the apartment door handle and lock was not supported by probable cause, and because the second search warrant relied entirely upon information provided in the first search warrant, as well as evidence obtained by its execution, we reverse.

**Reversed.**